Anthony PACEE *v.* STATE of Arkansas

CR 90-285                                      816 S.W.2d 856

Supreme Court of Arkansas
Opinion delivered September 30, 1991

*Edward Oglesby*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant Anthony Pacee appeals from a judgment on conviction of four counts of violation of the Arkansas Uniform Controlled Substance Act and felon in possession of a firearm, resulting in concurrent sentences of twenty, twelve, twelve and life. Sentencing was enhanced by reason of prior convictions.

Appellant presents four issues on appeal: one, the trial court erred in denying a motion to quash the jury panel and declare a mistrial because of improper use of peremptory challenges by the prosecutor; two, there was insufficient evidence linking appellant to the contraband seized from his residence and from a vehicle; three, the trial court erred in not allowing appellant or his counsel to testify at either the guilt or punishment phase concerning appellant's attempts at compliance with a plea bargain agreement; and four, it was error to admit state's exhibits two, three and four as evidence at the penalty phase of the trial.

I

Appellant is a fifty-one year old black male. He was tried by a panel consisting of eleven white and one black jurors. After the jury was seated, but prior to its being sworn, appellant moved to quash the venire and declare a mistrial upon the contention that the state had used its peremptory challenges to strike five of six black prospective jurors in violation of *Batson* v. *Kentucky*, 476 U.S. 79 (1986). The court retired to chambers where counsel for the state explained the reasons behind his strikes. Four of the five jurors excused by the state had served on juries during the current term. Ms. Westbrook had served on a jury which had been unable to reach a verdict in a criminal trial. Additionally, she had demonstrated some "preconceived notions" that the use of undercover agents in drug arrests was improper. (A. p. 55). Appellant's brief tacitly concedes that the state was justified in excusing Ms. Westbrook. Another juror, Robert Smith, had served on a jury in a criminal trial which had been unable to reach a verdict and was believed to have made disparaging remarks about a prospective witness, Officer Lancaster. Two of the five, Grigsby and McDaniel, had served as jurors in criminal trials which had difficulty in arriving at a verdict and had been unable to agree on a sentence. Additionally, Ms. McDaniel was believed by the state to be an acquaintance of some individuals who frequented Pacee's trailer where drugs were allegedly sold and used. As to the remaining juror, Ms. Carson, the state contends that her demeanor and her relationship with a witness in a recent criminal trial whose testimony the state regarded as perjured, rendered her subject to peremptory challenge. The state's sixth and final peremptory challenge was used to excuse Wilma Williams, a white juror, who like other members of the panel, had served on a hung jury in a criminal trial. The appellant submits these reasons are insufficient.

In *Batson* v. *Kentucky, supra*, the United States Supreme Court, while recognizing that a prosecutor ordinarily is entitled to exercise permitted peremptory challenges "for any reason at all, as long as that reason is related to his view concerning the outcome" of the case to be tried [citing *United States* v. *Robinson*, 421 F. Supp. 467 (Conn. 1976)], held that the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on the basis of race, or the assumption that

black jurors as a group will be unable impartially to consider the state's case against a black defendant.[1] If a discriminatory pattern in the use of peremptory challenges is demonstrated, the burden shifts to the state to come forward with a neutral explanation for challenging black jurors. The *Batson* court noted that while the scope of peremptory strikes was thus limited somewhat in relation to its historical exercise, the prosecutor's explanation need not rise to the level justifying the exercise of a challenge for cause. *Batson* at 97. This court has applied the law adopted in *Batson*, procedural and substantive, in several recent cases: *Thompson* v. *State*, 301 Ark. 488, 785 S.W.2d 29 (1990); *Owens* v. *State*, 300 Ark. 73, 777 S.W.2d 205 (1989); *White* v. *State*, 298 Ark. 55, 59, 764 S.W.2d 613 (1989); *Mitchell* v. *State*, 295 Ark. 341, 750 S.W.2d 936 (1988); *Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987). *Ford* v. *State*, 296 Ark. 8, 20, 753 S.W.2d 258 (1988); and *see Shields* v. *State*, 29 Ark. App. 141, 143, 778 S.W.2d 649 (1989). We have said that the standard by which we review the trial court's evaluation of the sufficiency of the prosecutor's explanation is whether those findings are clearly against a preponderance of the evidence. *Colbert* v. *State*, 304 Ark. 250, 801 S.W.2d 643 (1990).

In view of the state not having used all of its peremptory challenges to exclude members of the appellant's race, or appellant having been tried by an all white jury, and the fact that the state's explanations were found by the trial court to be sustained by the preponderance of the evidence, we reject the argument that a *Batson* violation has been demonstrated. However, we reach that conclusion because of the record presented. The notice of appeal designates the entire record as the record on appeal, yet a notation from the court reporter reflects that at the direction of counsel for the appellant the voir dire was excluded from the transcript. Thus we are deprived of that critical portion of the trial proceedings which would enable us to consider "all relevant circumstances" [*Batson*, 476 U.S. at 86-97] from which to determine how and why peremptory challenges were used or withheld, and whether the state's explanations are race neutral and credible. We note the nonuse of peremptory challenges may

---

[1] In *Edmonston* v. *Leesville Concrete Co., Inc.*, ___ U.S. ___, 111 S. Ct. 207 (1991), the *Batson* principle was extended to civil trials.

be just as relevant as the use, because it sometimes develops that the state's purported reason for striking a venire person of one race is not exercised in a neutral manner. See, for example, *Floyd v. State*, 511 So.2d 762 (Fla. Dist. Ct. of App. 1987), and cases cited in an exhaustive treatise on issues arising in the wake of *Batson.* A. Raphael, *Discriminatory Jury Selection: Lower Court Implementation of Batson v. Kentucky*, 293 Williamette L. Rev. 297 (1989). Before leaving the matter of the state's explanation for its strikes, we point out that the state's explanation that Ms. Carson was struck because of her "demeanor" could not withstand scrutiny for lack of specificity.

Appellant argues that the prosecutor failed to question several of the five panelists, arguing that grounds for peremptory challenge must be established by interrogation during voir dire. No authority is cited for this position and we are not persuaded. Certainly the prosecutor must be prepared to defend a strike on race neutral grounds if a sensitive inquiry is conducted, but we know of no reason why that ground, if sufficient, must be developed by question and answer. For that matter, it would not be permissible for the prosecutor to ask venire persons how they had voted on a case that had ended in a hung jury.

The state urges that appellant's objection under *Batson* was untimely, since it did not come until the jury was seated. It is the state's position that the objection must be advanced at the first opportunity, that is, when the first strike is used and, which is subject to challenge under *Batson*. But we are not convinced that a "pattern of discrimination" is demonstrated, at least for purposes of preserving the point for review, when the first member of a minority class is struck. So long as the objection is made before the jury is sworn, we regard it as timely. *Stanley v. State*, 313 Md. 50, 542 A.2d 1267 (1988). It has been suggested that panelists who have been struck not be released until the jury is sworn. In that manner reversible error can be averted should the trial court, after hearing the state's explanation, decide the state's grounds are insufficient and order the juror reinstated. That procedure appears sound.

## II

Appellant claims the trial court should have granted a directed verdict of acquittal in that there was no proof that

appellant was in constructive possession of contraband forming the basis of the four counts with which he was charged. Appellant cites *Cerda* v. *State*, 303 Ark. 241, 795 S.W.2d 358 (1990), as holding that constructive possession can only be inferred where the contraband is found in a place "immediately and exclusively accessible to the defendant and subject to his control." He maintains that since there were two women present, the contraband could not have been exclusively in appellant's control. The argument presupposes that a showing of joint possession or occupancy of premises where drugs are located defeats a charge of constructive possession. That is a misconception. When the facts demonstrate that the defendant's accessibility is not *exclusive*, the state must show additional factors to establish possession. *Osborne* v. *State*, 278 Ark. 45, 643 S.W.2d 25 (1982); *Plotts* v. *State*, 297 Ark. 66, 759 S.W.2d 793 (1988). Since appellant's brief fails to address this point further, we will observe only that the two women were not residents of the trailer and, in fact, had never been there previously. Furthermore, the briefcase in which drugs and drug parapernalia were found contained records identifying the appellant. A vehicle containing illegal items was registered in his name. It is enough for the state to prove two elements: 1) that the appellant exercised care, control and management over the contraband and 2) he knew the material possessed was contraband. *Id.*

## III

Appellant assigns error to the trial court's refusal to permit appellant to testify with reference to plea bargaining negotiations between the state and the appellant which evidently did not materialize. The trial court excluded the evidence on grounds of relevancy. Since we find neither a proffer nor any clear account of what the evidence would have been, we cannot say the trial court's ruling was an abuse of discretion. Counsel for appellant then asked that the evidence be introduced in the penalty phase as a matter of mitigation, with respect to which the trial court expressed some doubt. The outcome was that the trial judge reserved judgment on the prospective offer of this proof and the request was never renewed. Appellant's failure to obtain a ruling is fatal. *Shaw* v. *State*, 299 Ark. 474, 773 S.W.2d 827 (1989).

## IV

■ In the penalty phase of the trial the state purported to show that appellant, Anthony Curtis Pacee, had two prior felony convictions. State's exhibit one reflects a felony conviction with a sentence of five/ten years in the United States District Court for the Southern District of California for possession of a controlled substance with intent to distribute. Appellant does not controvert this conviction. State's exhibit two reflects a felony conviction in the Superior Court of Los Angeles County, California, for first degree robbery by Anthony C. Pace. Appellant objected to the introduction of exhibit two because the surname is Pace rather than Pacee. Exhibits three and four are records of the Department of Justice, Bureau of Criminal Identification, listing some sixteen alias[2] assumed by appellant between 1956 and 1976 involving criminal offenses in California in the vicinity of Los Angeles. The state contends the appellant's connection to these alias is evidenced by the number assigned by the FBI to Pacee-893 989 C. Appellant's objection to exhibits three and four is that they are not certified by the custodian or other official of the Department of Justice as being true and correct copies. But our statute provides that a previous conviction or finding of guilt of a felony may be proved by *any* evidence that satisfies the trial court beyond a reasonable doubt that the defendant was convicted or found guilty. Arkansas Code Ann. § 5-4-504 (1987). We think these documents more than satisfy that requirement.

Affirmed.

---

[2] Alias: Curtis Lee Jacobson, Jr; Curtis Lee Jacobs; Curtis Junior Jacobson; Lee Jacobs Prentice; Anthony Curtis Pace; Curtis Pace; Anthony Pase; Anthony Cornilius Pase; Anthony Cornilius Pasee; Anthony C. Passee; Tony Cornelius Passe; Cornelius Passe; A.C. Pacee; Tony C. Pacee; Anthony Passe; A.C. Passe.